1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   JARROD ERNEST SPENCER-HAYES,        )   Case No.: 1:20-cv-00734-NONE-JLT (HC)
                                         )
12                   Petitioner,         )   FINDINGS AND RECOMMENDATION TO
                                         )   DENY PETITION FOR WRIT OF HABEAS
13          v.                           )   CORPUS
                                         )
14   M. SPEARMAN,                        )
                                         )   [THIRTY-DAY OBJECTION DEADLINE]
15                   Respondent.         )
                                         )
16   _____)

17          Petitioner is currently serving an aggregate prison term of life without possibility of parole,

18   plus 25 years to life for a conviction of first degree murder, assault with a firearm, and various gang

19   and firearm allegations.  He filed the instant habeas petition challenging the conviction and sentence.

20   As discussed below, the Court finds the claims to be without merit and recommends the petition be

21   **DENIED**.

22   **I.      FACTUAL AND PROCEDURAL BACKGROUND**

23          The Court adopts the Statement of Facts in the California Court of Appeal, Fifth Appellate

24   District's ("Fifth DCA") unpublished decision[1]:

25          At around 1:45 a.m., on May 25, 2013, officers responded to a shooting outside of a gas
            station and liquor store in Fresno. There they found Aaron Foster dead from multiple
26

27   _____

28   [1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2),
     (e)(1).  Therefore, the Court will adopt the Fifth DCA's summary of the facts.  Moses v. Payne, 555 F.3d 742,
     746 (9th Cir. 2009).

                                               1

gunshot wounds. Witnesses at the scene explained that appellant approached Foster and shot him in the head. Several additional shots were fired, one of which struck a nearby witness. Witnesses did not see any argument or fighting between appellant and Foster, and did not believe Foster ever saw the gun.

Appellant was charged with murder and assault with a firearm, along with multiple firearm and gang-related enhancements. He proceeded to trial where the proceedings were bifurcated to deal with the criminal conduct and firearm enhancements first and the gang allegations second. During the portion of the trial dealing with the murder charge, the parties stipulated that appellant "is an active member and participant in the Villa Posse street gang and goes by the nickname Deuce or Jay," that Foster "was an active member and participant in the 107 Hoover Crips criminal street gang and went by the nickname Sonny or Sunno" at the time of the shooting, and that "there exists a long-standing and violent rivalry between the Villa Posse and the 107 Hoover Crips." Later, during the portion of the trial dealing with the gang allegations, the parties further stipulated that "the Villa Posse is a criminal street gang as defined in Penal Code Section 186.22(e) and (f)."

In seeking to prove the gang allegations, the People also called seven police officers and a gang expert to provide testimony regarding appellant's gang affiliation and motivation for committing the shooting. Five of the officers called detailed various jail classification interviews occurring between 2009 and 2013. In these interviews, appellant repeatedly admitted being a member of the Villa Posse gang, at one point stating he had been a member for eight years in 2013, confirmed he would have problems if housed with other gangs, and confirmed he went by the name Deuce or Jay. Another officer detailed the results of an investigation following an incident where appellant was assaulted while in jail. In that incident, appellant was attacked by gang members who acted believing he was a Villa Posse gang member. Appellant admitted to being a Villa Posse gang member during the investigation. The final officer testified regarding the execution of a search warrant in 2012 where a rifle and gun were found in appellant's apartment. In an interrogation related to that investigation, appellant admitted to being a Villa Posse gang member, showed the officer relevant gang signs, confirmed he went by the name Little Deuce, and stated he would be willing to shoot at a rival gang member. During the presentation of this evidence, appellant's counsel only objected during the discussion of the search warrant, raising hearsay and prejudice arguments, which were overruled.

The gang expert then provided testimony regarding appellant's gang membership and conduct, along with more general gang information. With respect to general background on the Villa Posse gang, the expert recounted historical information about the gang, including when it was first noticed and its original territory. The expert explained the gang was part of an alliance known as Twamp and, therefore, was historically in conflict with another alliance of gangs known as Mug. The expert discussed common phrases and colors used by Villa Posse gang members, and detailed their current territories. The expert testified she knew at least three Villa Posse members personally and that there were at least 90 members in the gang. The expert noted Villa Posse gang members regularly engage in illegal conduct, including the illegal possession of weapons, narcotic

offenses, shootings, and murder. The expert informed the jury that respect is an important concept in gangs generally and that respect can be gained within gangs through the commission of violent acts. The expert identified an ongoing violent rivalry between the Villa Posse and the 107 Hoover Crips, explaining she had knowledge of at least nine different shootings between a Villa Posse member and a Hoover Crip member between 2005 and 2010.

With respect to determining whether one was an active gang member generally, the expert identified the various factors considered in making this determination. These included things such as associating with other gang members, having gang tattoos, and self-identifying as a gang member during jail classification interviews, among others. The expert then recounted at least seven different incidents, between 2009 and 2011, where the expert had been made aware of instances appellant had been contacted or arrested while in the company of known Villa Posse gang members. In one of these incidents, the expert stated appellant and a known gang associate were determined to have engaged in a shooting involving a different Hoover Crip's house. There is no indication in the record the expert personally participated in investigating any of these incidents.

Based on this evidence, the expert presented several opinions. These included opinions that appellant was an active member of the Villa Posse gang, an opinion the expert stated would not change if the jail classification evidence was not considered, and that an active member of the Villa Posse gang would know of the conduct of other members. On this point, the expert noted appellant had committed many crimes with other gang members and had been present during the execution of a search warrant seeking evidence of criminal conduct. The expert further opined that Foster was a Hoover Crip and well known in the community as such. Based on hypothetical questions in line with the evidence presented, the expert opined a shooting like the one in this case would further the interests of the Villa Posse gang because the gang "would gain in reputation for being ruthless or being violent." The expert also opined the shooting would benefit the gang because as the shooter's status for violence increases, so does the reputation of the gang, increasing the gang's ability to instill fear and gain respect. Finally, the expert opined that murdering a rival gang member was at the top of the list of ways to do work for the gang, due to the potential consequences both of being caught and of incurring retaliation from the act.

Appellant was ultimately convicted by jury of both murder and assault with a firearm, along with enhancements for using a firearm. The jury also found true, with respect to the murder charge, a gang-related special circumstance (§ 190.2, subd. (a)(22)) and a gang enhancement (§ 186.22, subd. (b)(1)) allegation. Based on these findings, appellant was sentenced to a term of 25 years to life for committing murder with a firearm, followed by an indeterminate term of life without the possibility of parole based on the murder charge and special circumstance finding. He then received a consecutive sentence of 14 years for the assault charge.

This appeal timely followed. We initially affirmed appellant's conviction in a nonpublished opinion dated October 30, 2017. Shortly thereafter, on November 6, 2017,

1
2
3
4
5

appellant filed a petition for rehearing arguing the recently enacted Senate Bill 620, which provides a trial court has discretion to strike certain firearm enhancements, applied retroactively to his case and warranted a remand for resentencing. The People conceded Senate Bill 620 applies retroactively, but argued, after we granted rehearing, that appellant's case should not be remanded because such a remand would be futile. In this revised opinion, we reissue our prior decision to affirm appellant's conviction and consider the dispute whether remand is appropriate in light of Senate Bill 620.

6

People v. Hayes, No. F071352, 2018 Cal. App. Unpub. LEXIS 121, at *3-9 (Jan. 8, 2018).

7
8
9

The Fifth DCA remanded the matter to the trial court to decide whether to exercise its discretion to strike the firearm enhancement and in all other respects affirmed the judgment. Id. at *2-3. The petition for review was denied by the California Supreme Court. (Doc. 19-23.)

10
11
12
13
14

Petitioner filed a state habeas petition in the Fresno County Superior Court, which was denied on procedural grounds. (Docs. 19-24, 19-25.) He then filed a state habeas petition in the California Court of Appeal, which was denied on procedural grounds. (Docs. 19-26, 19-27.) Finally, he filed a state habeas petition in the California Supreme Court, which was denied on procedural grounds. (Docs. 19-28, 19-29.)

15
16

Petitioner filed the instant habeas petition on April 22, 2020. (Doc. 1.) Respondent filed its answer on August 25, 2020. (Doc. 18.) Petitioner filed a traverse on September 25, 2020. (Doc. 20.)

17

**II.     DISCUSSION**

18

A.     Jurisdiction

19
20
21
22
23
24

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

25
26
27
28

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

4

governed by its provisions.

B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is

5

unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.      Review of Petition

The petition presents the following claims for relief: (1) The admission of certain gang expert testimony violated the Fifth and Sixth Amendments; (2) That the gang-murder special circumstance was unconstitutional on its face and as applied in his case because it did not sufficiently narrow the class of eligible offenders; (3) That there was insufficient evidence to support the true finding on the gang-murder special circumstance; and (4) That his stipulations were tantamount to a guilty plea and thus trial court was required to advise Petitioner and obtain a waiver of his constitutional rights before accepting the stipulations.

1.      Gang Expert Testimony

Petitioner challenges the admission of certain gang expert testimony under the Fifth and Sixth Amendments. (Doc. 1 at 9, 13.) In the last reasoned decision, the Fifth DCA denied the claim as follows:

**_Admission of Gang Expert's and Related Testimony_**

Appellant also attacks a large portion of the evidence introduced through and relied upon by the gang expert to support both the gang enhancement and the gang-related special circumstance on two principal grounds. First, under *People v. Elizalde* (2015) 61

6

Cal.4th 523, 189 Cal. Rptr. 3d 518, 351 P.3d 1010 (*Elizalde*), appellant contends all evidence of gang membership obtained during so-called jail classification interviews and police questioning was improperly admitted because the People failed to demonstrate appellant had been provided appropriate *Miranda* warnings prior to giving his statements. Appellant relies on this argument in seeking to exclude not only the multiple booking interviews, but also statements made when appellant was the victim of an assault while in jail and following the execution of a search warrant in 2012. Second, under *People v. Sanchez* (2016) 63 Cal.4th 665, 204 Cal. Rptr. 3d 102, 374 P.3d 320 (*Sanchez*), appellant contends all evidence of gang membership introduced by the expert which was based solely on "the content of reports written by other police officers regarding appellant's prior offenses and gang contacts, and Foster's gang affiliation" was inadmissible because it violated the confrontation clause of the United States Constitution. Appellant relies on this argument in seeking to exclude all evidence relied on by the gang expert derived from police reports and contacts where the reporting officer did not testify, including multiple reports from 2009 through 2012, and the reports relating to the incident in this case.

*Standard of Review and Applicable Law*

Considering the order under which we will analyze the arguments, we begin by recounting the law relevant to appellant's confrontation clause position and then proceed to the law regarding appellant's *Miranda* claim.

Confrontation Clause Principles

"The Sixth Amendment to the federal Constitution guarantees a defendant's right to confront adverse witnesses. [Citation.] In addition, the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*People v. Harris* (2013) 57 Cal.4th 804, 839-840, 161 Cal. Rptr. 3d 364, 306 P.3d 1195.) Under federal confrontation clause jurisprudence, as interpreted by our California Supreme Court, at least two factors must be considered to determine whether a statement is testimonial. "First, to be testimonial the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*People v. Dungo* (2012) 55 Cal.4th 608, 619, 147 Cal. Rptr. 3d 527, 286 P.3d 442.) However, "[i]t is evident that Sixth Amendment jurisprudence following the Supreme Court's decision in *Crawford v. Washington* (2004) 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (*Crawford*) remains in considerable flux." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 395, 178 Cal. Rptr. 3d 185, 334 P.3d 573.) Indeed, courts have spent significant effort collecting and summarizing the various permutations of the doctrine. (*See, e.g., People v. Barba* (2013) 215 Cal.App.4th 712, 714-733, 155 Cal. Rptr. 3d 707.)

As appellant notes, in the course of this appeal our Supreme Court provided additional guidance in this area when it decided *Sanchez. Sanchez* considered "the degree to which the *Crawford* rule limits an expert witness from relating case-specific hearsay content in explaining the basis for his opinion." (*Sanchez, supra*, 63 Cal.4th at p.

670.) *Sanchez* reasserted the historical distinction between case-specific hearsay and the general hearsay relied upon by experts to detail general knowledge in the expert's field of expertise. (*Id.* at pp. 675-678.) In doing so, it clarified that "[i]f an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay." (*Id.* at p. 684.)

Having established this baseline, the Court then considered whether certain types of hearsay evidence in gang cases are testimonial in nature and thus within the purview of *Crawford's* constitutional restrictions on admissibility. (*Sanchez, supra*, 63 Cal.4th at p. 687.) The Court detailed its understanding of the present evolution of what constitutes testimonial hearsay, explaining as a precursor, "[t]estimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony. Nontestimonial statements are those whose primary purpose is to deal with an ongoing emergency or some other purpose unrelated to preserving facts for later use at trial." (*Id.* at p. 689.) It then recounted various permutations of the primary purpose test, before applying the overarching doctrine to certain evidence relied upon in reaching the gang conclusions in that matter. (*Id.* at pp. 689-694.) In its application, the Court found that police reports are generally testimonial in nature, as are field identification cards written during the course of an active investigation. (*Id.* at pp. 695-697.) The Court concluded the admission of such testimonial hearsay violates the confrontation clause. (*Sanchez*, at pp. 695-698.)

"'"Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705.' [Citation.] We ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error."'" (*People v. Capistrano* (2014) 59 Cal.4th 830, 873, 176 Cal. Rptr. 3d 27, 331 P.3d 201.) "'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' [Citation.] Thus, the focus is what the jury actually decided and whether the error might have tainted its decision." (*People v. Neal* (2003) 31 Cal.4th 63, 86, 1 Cal. Rptr. 3d 650, 72 P.3d 280.)

### *Miranda* Principles

Under the Fifth Amendment as detailed by the rule of *Miranda, supra*, 384 U.S. at pp. 478-479, "certain admonitions must be given before a suspect's statement made during custodial interrogation can be admitted in the prosecution's case-in-chief." (*Elizalde, supra*, 61 Cal.4th at pp. 527, 532.) Historically, however, certain questions asked under what is called the booking exception are exempted from this rule. In *Elizalde*, our Supreme Court explained, "That authority recognizes that, for a limited category of booking questions involving biographical data, no *Miranda* warnings are required and admission of the defendant's answers at trail does not violate the Fifth Amendment. For questions outside this limited category, however, answers given, without an admonition, to questions an officer should know are reasonably likely to elicit an incriminating

response may not be admitted in the prosecution's case-in-chief." (*Id.* at pp. 531-532, fn. omitted.)

The question in *Elizalde* was whether "routine questions about gang affiliation, posed to defendant while processing him into jail on murder charges, come within *Miranda's* well-recognized booking exception." (*Elizalde, supra*, 61 Cal.4th at p. 527.) Retracing principles relevant to the meaning of custodial interrogation, the Court noted one is in custody when they have actually been taken into custody or otherwise deprived of their freedom in any significant way, and is interrogated when the police utilize any words or actions, other than those normally attendant to arrest and custody, that they know are reasonably likely to elicit an incriminating response from a suspect. (*Id.* at p. 534.) Considering California's "comprehensive scheme of penal statutes aimed at eradicating criminal activity by street gangs," (*id.* at pp. 538-540) the Court concluded standard questions about gang affiliation asked during the booking process for a murder charge were "reasonably likely to elicit an incriminating response." (*Ibid.*) But the Court noted that prior cases, such as *People v. Williams* (2013) 56 Cal.4th 165, 152 Cal. Rptr. 3d 778, 294 P.3d 1005, applied the same standard when finding officers asking questions in response to a request for protective custody "'were appropriately responding to defendant's own security concern, *and would not reasonably have expected him to produce a confession.*'" (*Elizalde, supra*, 61 Cal.4th at p. 529.)

As with the confrontation clause challenges, the "erroneous admission of a defendant's statements obtained in violation of the Fifth Amendment is reviewed for prejudice under the beyond a reasonable doubt standard." (*Elizalde, supra*, 61 Cal.4th at p. 542.) "That test requires the People here 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (*Ibid.*)

We review whether the proffered evidence violated the Fifth Amendment, and the confrontation clause, and whether any such error was prejudicial, issues of law, de novo. (See *Elizalde, supra*, 61 Cal.4th at p. 530; *People v. Stamps* (2016) 3 Cal.App.5th 988, 992, 207 Cal. Rptr. 3d 828.)

*Appellant's* Sanchez *and* Elizalde *Arguments Have Not Been Forfeited*

Focusing on the fact that appellant's counsel offered no objections to the majority of the evidence contested on appeal, raising only hearsay and prejudice arguments to evidence concerning appellant's admission after being attacked in jail, the People argue appellant forfeited his claims under the Fifth and Sixth Amendments. Aside from one issue, we do not agree.

Both *Sanchez* and *Elizalde* constitute substantial changes in the law concerning the admissibility of evidence in criminal trials. *Sanchez* itself recognized that the paradigm in existence at the time held that an expert's testimony could relate facts typically considered hearsay provided the jury received a proper limiting instruction. (*Sanchez, supra*, 63 Cal.4th at p. 679.) The Court then wholly rejected that paradigm and set forth the current test. While *Elizalde* did not widely overturn existing legal precedent, it did resolve a split between the Courts of Appeal concerning the legitimate scope of the

booking exception in a manner that substantially changed the admissibility analysis for statements made during the booking process. (*Elizalde, supra*, 61 Cal.4th at pp. 533-534.) As the People recognize, this clarification occurred after appellant's trial, which accounts for appellant's failure to raise such issues at the time. Thus, at the time of appellant's trial, an objection under the confrontation clause or one seeking exclusion of evidence subject to the then-understood booking exception would have been futile. Accordingly, we excuse appellant's lack of objection on these grounds and review his contentions on the merits. (See *People v. Welch* (1993) 5 Cal.4th 228, 237, 19 Cal. Rptr. 2d 520, 851 P.2d 802 ["Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence."].)

We note, however, that this conclusion does not extend to all grounds raised by appellant in this appeal. Specifically, appellant has alleged an *Elizalde* violation with respect to statements he made in the course of questioning following the execution of a search warrant in 2012. The record provides no basis to conclude these statements were made following appellant's arrest as part of the booking process, as opposed to being made through normal interrogation practices following a legal detention. In our independent review of the record, we see no foundational basis to conclude appellant's *Elizalde* argument would apply to the contested search warrant statements. As such, appellant has made no showing the law regarding appropriate *Miranda* warnings has changed in a manner which would warrant exercising our discretion to overlook appellant's lack of objection. For similar reasons (i.e., the lack of any evidence *Elizalde* is applicable to these statements), we see no basis to support appellant's assertion of ineffective assistance of counsel for failing to object. As *Elizalde* error was not implicated, there could be no error in failing to object on such grounds.

In light of the above conclusions, we now consider whether admitting the evidence properly included within this appeal violated appellant's constitutional rights.

*The Contested Gang Expert Testimony Violated the Confrontation Clause*

Under appellant's confrontation clause argument, he contends that the gang expert impermissibly introduced evidence from prior police contacts, spanning from 2009 to 2012, because the expert relied upon and recounted that information solely from police reports. The People acknowledge that their gang expert relied upon "over half a dozen police reports detailing law enforcement contacts with appellant and other Villa Posse gang members." The People argue, though, there is "nothing in *Crawford* or its progeny however, that prohibits a gang expert from relying on hearsay as a basis for her opinions as to a person's gang membership status or that a particular crime was gang related." The People properly note that *Sanchez* was pending at the time of their briefing and that the case relates to this argument.

Given the subsequent guidance provided by *Sanchez*, it is apparent that the evidence introduced through the gang expert derived from prior police reports was inadmissible testimonial hearsay. It is, in fact, now clear that the *Crawford* line of cases prohibits a

10

gang expert from recounting testimonial hearsay as the basis for her opinion. None of the evidence related from police reports and field contacts appears to have arisen in the course of an emergency and, thus, there is no indication the police reports and field information are not testimonial in nature. (See *Sanchez, supra*, 63 Cal.4th at pp. 695-697.) Introduction of such evidence, therefore, violated the confrontation clause. (*Id.* at pp. 695-698.)

*Some of the Remaining Contested Testimony Violated* Miranda

Appellant's *Miranda* arguments cover three distinct forms of evidence, two of which were preserved for review in this appeal. In the first, appellant objects to testimony recounting question and answer sessions during various jail classification interviews designed to determine where appellant would be housed while incarcerated. In the second, appellant applies the same logic to questions asked after appellant's 2012 assault while in jail. We take each in turn.

<u>Jail Classification Interviews</u>

Five officers responsible for jail classification procedures testified concerning interviews where appellant admitted to gang membership, twice in 2009, twice in 2012, and once in 2013. None of these officers testified they provided *Miranda* warnings prior to questioning appellant, nor were they questioned on whether they did so. Several did state they regularly ask their questions of all inmates for classification purposes. The People appear to recognize that, under *Elizalde*, introduction of such evidence was erroneous. However, the People argue appellant cannot demonstrate error generally because the record is silent as to any *Miranda* warnings and note that *Elizalde* was not the law at the time of the trial. We find neither argument persuasive.

As a matter of criminal procedure correcting a serious flaw in the factfinding process at trial—the introduction of constitutionally infirm evidence—we have no doubt that *Elizalde* should be applied in this appeal. (See *In re Montgomery* (1970) 2 Cal.3d 863, 867, 87 Cal. Rptr. 695, 471 P.2d 15 [rules of criminal procedure correcting serious flaws in the factfinding process at trial routinely applied retroactively]; see also *People v. Leon* (2016) 243 Cal.App.4th 1003, 1012, 197 Cal. Rptr. 3d 600 [noting *Elizalde* was issued during the pendency of the appeal, as here, before applying it].) Under *Elizalde's* analysis, absent evidence appellant received *Miranda* warnings before being asked jail classification questions regarding his gang affiliations, the People may not introduce appellant's statements in their case-in-chief. (*Elizalde, supra*, 61 Cal.4th at pp. 538-540.) Nor does the lack of evidence of *Miranda* warnings sink appellant's claim. Having found that appellant's objections were not forfeited, due to the substantial change in the law affected by *Elizalde*, and that *Miranda's* protections applied to this situation, the burden falls to the People to demonstrate a knowing, intelligent, and voluntary waiver of those rights. (*People v. Linton* (2013) 56 Cal.4th 1146, 1171, 158 Cal. Rptr. 3d 521, 302 P.3d 927.) There is no evidence of such a waiver in this case. Accordingly, we conclude the jail classification testimony was improperly admitted.

11

Assault Investigation

We reach a different conclusion with respect to the assault investigation. As our Supreme Court settled the law on the booking exception in *Elizalde*, partially through clarifying the test for interrogation laid out in *Rhode Island v. Innis* (1980) 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 was controlling, it specifically discussed its prior case of *Williams*. (*Elizalde, supra*, 61 Cal.4th at pp. 534, 538.) In *Williams*, the Court concluded questions asked "'appropriately responding to defendant's own security concern'" were of the type that would not reasonably have expected the defendant to produce a confession. (*Elizalde*, at p. 537.)

We view the questions asked after appellant was assaulted in 2012 to fall within the permissible scope of questioning approved in *Williams* and examined in *Elizalde*. The record testimony demonstrates officers were investigating appellant's own complaints about being attacked in prison and following up on statements made by appellant that demonstrated the attack may have had a gang-related motivation. While the direct question whether appellant was, in fact, a gang member is notable, on the whole we conclude the questions asked were not of the sort that the investigating officer would have reasonably expected appellant to produce a confession. Indeed, appellant was not reasonably faced with any possibility of obtaining a gang-related charged as a result of this investigation. As such, we do not find *Elizalde* barred admission of this evidence.

*The Errors Were Not Prejudicial*

Having found error under both *Sanchez* and *Elizalde*, we next consider whether that error was prejudicial. In this analysis, determining if appellant suffered prejudice from the erroneous introduction of testimonial hearsay requires us to examine the elements of the offense and the relevant evidence. (See *Sanchez, supra*, 63 Cal.4th at p. 698.) The People argue any error was harmless beyond a reasonable doubt because other evidence, including the stipulations entered into, demonstrates conclusively both that appellant was "an active member and participant of the Villa Posse street gang" and that the motive for murdering Foster was gang related. Considering the errors identified separately or cumulatively, and recognizing the heightened requirement that the People prove "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,'" we ultimately find the errors harmless beyond a reasonable doubt. (*Elizalde, supra*, 61 Cal.4th at p. 542.)

As appellant contests the admissibility of evidence under both the gang enhancement and the gang-related special circumstance, we consider the relevant requirements of both. The gang enhancement requires proof a felony was committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) "The enhancement set forth in section 186.22(b)(1) does not pose a risk of conviction for mere nominal or passive involvement with a gang. Indeed, it does not depend on membership in a gang at all. Rather, it applies when a defendant has personally committed a gang-related felony with the specific intent to aid members of

that gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 67-68, 119 Cal. Rptr. 3d 415, 244 P.3d 1062.)

The gang-related special circumstance requires "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).) Although not identical, the language of section 190.2, subdivision (a)(22) "substantially parallels the language of section 186.22, subdivision (b)(1)." (*Carr, supra*, 190 Cal.App.4th at p. 488.) In particular, section 186.22, subdivision (b)(1) requires a specific intent to "promote, further, or assist in any criminal conduct by gang members," while section 190.2, subdivision (a)(22) requires one act "to further the activities of the criminal street gang."

The nature of the murder in this case, as shown by the evidence, is calculated and heinous. But, standing alone, there is nothing about it which suggests gang activity. Rather, that inference arises out of the totality of the evidence presented by the People regarding appellant and the victim of the crime. Even without the evidence excluded under *Sanchez* and *Elizalde*, the People demonstrated that appellant and Foster were members of rival gangs that had a current and ongoing dispute, resulting in several shootings. They also demonstrated appellant's gang involvement was long-standing, involved the possession of weapons, and was significant enough that he was targeted by rival gang members when in jail. Finally, they showed through appellant's own words that he would, if the situation called for it, shoot at a rival gang member.

The excluded evidence aided in painting a fuller picture of appellant's gang involvement. It showed multiple arrests and bookings, long-term gang involvement, and an apparent correlation between the two. While the evidence properly admitted did not directly shed light on appellant's knowledge that Foster was a rival gang member, imply that appellant and Foster had any prior history or knowledge of each other, or otherwise directly show appellant was targeting Foster as a rival gang member, it did permit the jury to draw these rational conclusions. The properly excluded evidence added little, if anything, to those points and, therefore, was generally duplicative of the admitted evidence. As such, we conclude beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict.

People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *14-31.

> a.   *Legal Standard*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const ., Amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Davis v. Washington,

547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused, i.e., those who 'bear testimony.'" Crawford, 541 U.S. at 51 (citation omitted); Davis, 547 U.S. at 823-24. "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51 (citation and some internal punctuation omitted); Davis, 547 U.S. at 824. As the Davis court explained:

> [a] critical portion of [*Crawford's*] holding . . . is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

Davis, 547 U.S. at 821 (citation omitted). Thus, nontestimonial statements do not implicate the Confrontation Clause. Giles v. California, 554 U.S. 353, 376 (2008). Moreover, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n. 9. Additionally, a Confrontation Clause violation is subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

"Although Crawford did not define 'testimonial' or 'nontestimonial,' it made clear that the Confrontation Clause was concerned with 'testimony,' which 'is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,' and noted that '[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.'" Delgadillo v. Woodford, 527 F.3d 919, 927 (9th Cir.2008) (quoting Crawford, 541 U.S. at 51). Subsequent Supreme Court cases have suggested that a statement is "testimonial" if its declarant knew, or should have known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation into past events. See Williams v. Illinois, 567 U.S. 50, 82 (2012) ("The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a

14

targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions."); <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009) (opining that a statement is "testimonial" if it was made for an "evidentiary purpose" and "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial") (internal citation and quotation marks omitted).

> *b.*   *Analysis*

The state court applied the correct legal standard under the Sixth Amendment by applying <u>Crawford</u>, 541 U.S. 36. Thus, the only question is whether the state court's adjudication is objectively unreasonable.

First, as to the statements Petitioner made during the 2012 assault investigation, the Fifth DCA's determination that these "[fell] within the permissible scope of questioning approved in <u>Williams</u> and examined in <u>Elizalde</u>" was objectively reasonable. (Doc. 18 at 24); <u>People v. Hayes</u>, 2018 Cal. App. Unpub. LEXIS 121, at *27. Regarding the other challenged evidence, even if there was error, the state court reasonably concluded that the errors were harmless beyond a reasonable doubt. As Respondent contends, the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." (Doc. 18 at 25, quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)). Respondent argues that the strength of all the properly admitted gang-related evidence and stipulations regarding Petitioner's gang membership "meant that the admission of some testimonial hearsay and some unmirandized statements was merely cumulative of other admissible evidence." (Doc. 18 at 24-25.) As discussed by the Fifth DCA, even without the evidence excluded under <u>Sanchez</u> and <u>Elizalde</u>, the prosecution demonstrated that Petitioner and Foster were members of rival gangs that had a current and ongoing dispute, resulting in several shootings. <u>People v. Hayes</u>, 2018 Cal. App. Unpub. LEXIS 121, at *30. They also demonstrated Petitioner's gang involvement was long-standing, involved the possession of weapons, and was significant enough that he was targeted by rival gang members when in jail. <u>Id</u>. Finally, they showed through Petitioner's own words that he would, if the situation called for it, shoot at a rival gang member. <u>Id</u>. The Fifth DCA reasonably found that the properly excluded evidence added little, if anything, to those points and, therefore, was generally a duplication of other admitted evidence. <u>Id</u>. at *30-31. Accordingly, it was

objectively reasonable for the state court to conclude beyond a reasonable doubt that the improperly admitted evidence did not contribute to the verdict. Therefore, the Petitioner is not entitled to habeas relief because the state court decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. And even if error occurred, it could have had no effect on the jury's verdict. The claim should be denied.

    2.    Insufficient Evidence of Special Circumstance Finding

    Petitioner claims that the gang-murder special circumstance was unconstitutional on its face and as applied in his case because it did not sufficiently narrow the class of eligible offenders. (Doc. 1 at 10.) Petitioner raised this claim on direct appeal. In the last reasoned decision, the Fifth DCA denied the claims as follows:

> Turning to appellant's arguments concerning only the gang-related special circumstance, we readily reject appellant's contention that the gang-related special circumstance is unconstitutional for failing to sufficiently differentiate between those subject to the death penalty and those not subject to the death penalty. The requirement of an intentional killing done to further an identified criminal street gang is a sufficient distinguishing factor to pass constitutional muster. (See *People v. Stevens* (2007) 41 Cal.4th 182, 215, 59 Cal. Rptr. 3d 196, 158 P.3d 763 [lying-in-wait special circumstances and lying-in-wait murder sufficiently distinct because the former requires an intent to kill, while the latter does not].) We also note our Supreme Court has repeatedly stated the factors identified in the relevant statute pass constitutional muster as a whole. (See *People v. Sivongxxay* (2017) 3 Cal.5th 151, 198, 219 Cal. Rptr. 3d 265, 396 P.3d 424.)
>
> Similarly, we reject appellant's "as applied" challenge on sufficiency of the evidence grounds and its suggestion that the same evidence cannot demonstrate both that a gang member's conduct benefited his gang and that it furthered the gang's activities. In doing so, we need not resolve appellant's contention that the gang-related special circumstance requires more than a retroactive benefit to the gang. Even if we accept this as true, the evidence introduced regarding a potential benefit to the gang from the murder separately and adequately supports the reasonable inference that the killing was done to further the gang's activities. There is no logical reason why the evidence cannot support both inferences, and appellant has pointed us to no legal precedent stating so. Evidence concerning the basis for and effect of one's conduct can reasonably support multiple nonconflicting inferences. Specific to this case, the evidence demonstrated there was an ongoing dispute between appellant's gang and the victim's gang and that this dispute had involved several previous shootings. Thus, evidence that another shooting occurred between the gangs, in which one gang member shot another execution style in a public place, could rationally support both the conclusions that the shooting retroactively benefited the gang by increasing its reputation for violence and that it furthered the gangs' activities by continuing the current and ongoing dispute in a public way. The

16

gang expert considered both inferences and stated her opinion that the conduct both benefited the gang retroactively and furthered the gang's activities. The jury could rationally accept this opinion based on the evidence before it.

People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *32-34.

> a.    Legal Standard

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.  Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Id. at 326.  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson,

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the

federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

       *b.*    *Analysis*

The Fifth DCA reasonably rejected Petitioner's contention that the gang-related special circumstance is unconstitutional for failing to sufficiently differentiate between those subject to the death penalty and those not subject to the death penalty, stating that the requirement of an intentional killing done to further an identified criminal street gang is a sufficient distinguishing factor to pass constitutional muster. People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *32-33. Additionally, the Fifth DCA reasonably rejected Petitioner's "as applied" challenge on sufficiency of the evidence grounds and its suggestion that the same evidence cannot demonstrate both that a gang member's conduct benefited his gang and that it furthered the gang's activities. Id. at *33. The state court reasonably found that the evidence introduced regarding a potential benefit to the gang from the murder separately and adequately supports the reasonable inference that the killing was done to further the gang's activities. Id. at *33-34. As stated by the Fifth DCA, the evidence demonstrated there was an ongoing dispute between Petitioner's gang and the victim's gang and that this dispute had involved several previous shootings, and evidence that another shooting occurred between the gangs, in which one gang member shot another execution style in a public place, could rationally support both the conclusions that the shooting retroactively benefited the gang by increasing its reputation for violence and that it furthered the gangs' activities by continuing the current and ongoing dispute in a public way. Id. at *34. This claim should be rejected.

    3.    <u>Sufficiency of the Evidence</u>

Petitioner contends that there was insufficient evidence to support the true finding on the gang-murder special circumstance. (Doc. 1 at 11.) Petitioner raised this claim on direct review in the state courts. In the last reasoned decision, the appellate court denied the claim as follows:

///

*The Evidence Was Sufficient to Support Appellant's Conviction*

Although we have found any error in admitting evidence in this matter was harmless, we are still faced with appellant's contention, based in part on the request to exclude the above evidence and the contested stipulations, that there was insufficient evidence to support his conviction. Appellant also argues insufficient evidence with respect to the gang-related special circumstance specifically, regardless of the admissibility of the evidence. We must therefore determine whether the prosecution presented substantial evidence in support of the gang allegations. This entails a review of the record in the light most favorable to the judgment, accepting as true all evidence that is reasonable, credible and of solid value such that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, 19 Cal. Rptr. 3d 402.)

Having resolved the evidentiary disputes, we conclude the evidence was sufficient to support the contested convictions. As noted, *ante*, appellant's stipulations covered much of the evidence necessary to convict under either the gang enhancement or the gang-related special circumstance. Indeed, following the stipulation, all that remained was proving the murder was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" for the gang enhancement and "carried out to further the activities of the criminal street gang" for the gang-related special circumstance. (§§ 186.22, subd. (b)(1), 190.2, subd. (a)(22).) On these points, the People introduced evidence regarding appellant's past involvement with the gang, a stipulation regarding the violence between appellant's gang and the victim's gang, and expert testimony tying these facts together in an opinion that appellant's conduct both benefited and furthered his criminal street gang. When viewed in the light most favorable to the prosecution, the properly considered evidence as a whole was sufficient to prove the gang allegations.

People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *31-32.

       a.     *Legal Standard*

The same legal standard applies as in the above section, related to the sufficiency of the evidence related to special circumstances, so it is not repeated here.

       b.     *Analysis*

Viewing the evidence in the light most favorable to the prosecution, it is clear that the state court's determination that there was sufficient evidence was not unreasonable. As noted by the state court, Petitioner's stipulations covered much of the evidence necessary to convict under either the gang enhancement or the gang-related special circumstance. Id. at *31-32. Following the stipulation,

the Fifth DCA noted, all that remained was proving the murder was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" for the gang enhancement and "carried out to further the activities of the criminal street gang" for the gang-related special circumstance. Id. at *32, citing §§ 186.22, subd. (b)(1), 190.2, subd. (a)(22). The state court noted that the prosecution introduced evidence regarding Petitioner's past involvement with the gang, a stipulation regarding the violence between Petitioner's gang and the victim's gang, and expert testimony tying these facts together in an opinion that Petitioner's conduct both benefited and furthered his criminal street gang. Id. The Fifth DCA reasonably concluded that the properly considered evidence as a whole was sufficient to support the contested convictions. Petitioner fails to show that no fairminded jurist would agree with the state court's determination. Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, the Jackson standard, and the claim should be denied.

> 4. _Petitioner's Stipulations_

Petitioner alleges that his stipulations were tantamount to a guilty plea and thus the trial court was required to advise Petitioner and obtain a waiver of his constitutional rights before accepting the stipulations. (Doc. 1 at 12.) This claim was also raised on direct appeal and rejected by the Fifth DCA in the last reasoned decision, as follows:

> **_Propriety of Appellant's Stipulations_**
>
> As noted above, in the course of the bifurcated proceedings, appellant's counsel entered into two stipulations on appellant's behalf. Appellant now contends that these stipulations "explicitly and implicitly covered every fact and element of the gang special circumstance necessary for a true finding." We do not agree.
>
> _Standard of Review and Applicable Law_
>
> Under the cases of _Boykin v. Alabama_ (1969) 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (_Boykin_) and _In re Tahl_ (1969) 1 Cal.3d 122, 81 Cal. Rptr. 577, 460 P.2d 449 (_Tahl_), courts are obligated to inform a defendant of certain constitutional rights prior to accepting a guilty plea. Under the so-called _Boykin-Tahl_ rule, in a criminal proceeding "a guilty plea is not valid unless the record reflects . . . the defendant had been advised of and waived his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination." (_People v. Gaul-Alexander_ (1995) 32 Cal.App.4th 735, 746, 38 Cal. Rptr. 2d 176.)

This principle was later extended to evidentiary stipulations, although it was severely limited in its application. As the California Supreme Court explained in *People v. Adams* (1993) 6 Cal.4th 570, 581, 24 Cal. Rptr. 2d 831, 862 P.2d 831, "When a defendant who has asserted and received his right to trial, and has waived none of his constitutional rights, elects to stipulate to one or more, but not all, of the evidentiary facts necessary to . . . imposition of additional punishment on finding that an enhancement allegation is true, the concerns which prompted the *Boykin* holding are not present." Accordingly, the *Boykin-Tahl* rule is not "applicable to an evidentiary stipulation which does not admit the truth of the allegation itself or every fact necessary to imposition of the additional punishment other than conviction of the underlying offense. Unless the stipulation or admission is that broad, it does not have the definite penal consequences necessary to trigger the *Boykin-Tahl* requirements." (*Adams*, at p. 580.)

*Appellant's Stipulations Were Not Tantamount to a Guilty Plea*

As appellant recognizes, the gang-related special circumstance contains four elements. First, that the defendant intentionally killed the victim. Second, that the defendant was an active participant in a street gang. Third, that the defendant knew of the gang's illegal purpose. And, fourth, that the murder was carried out to further the activities of the criminal street gang. (§ 190.2, subd. (22); *People v. Carr* (2010) 190 Cal.App.4th 475, 488, 118 Cal. Rptr. 3d 221 (*Carr*).) We agree with appellant that, following his plea, the first three of these elements were met. The jury in the first phase had already concluded appellant intentionally killed Foster, and the stipulations that appellant was an active member in the Villa Posse and that the Villa Posse is a criminal street gang were more than sufficient to demonstrate the second and third elements. However, even considering the stipulation that the Villa Posse and Hoover Crips had a long-standing and violent rivalry, we do not agree appellant's stipulations were sufficient to demonstrate the murder was carried out to further the activities of the criminal street gang.

Appellant argues the fourth element was met because "the People's gang expert used the stipulated facts as the basis for her opinion that this murder was carried out to further the activities of the criminal street gang." However, for this argument to succeed, we would have to ignore that the evidence relied upon by the expert was insufficient to satisfy the element itself. Indeed, the expert's testimony was necessary to explain, both considering the history of gangs generally and the relevant gangs in particular, why an attack carried out by a Villa Posse gang member, against a Hoover Crip gang member, and undertaken in a manner similar to that which occurred here, would further the activities of the Villa Posse gang. Without this additional expert evidence, a jury might rationally look at such an event and conclude it does not further the activities of the Villa Posse gang because the gang member involved risks being arrested and placed in jail for a substantial period of time, unable to commit further crimes or otherwise benefit the gang. The additional expert testimony connecting the specific conduct that occurred to the statutory requirement that it further the Villa Posse gang's activities was not explicitly, or even implicitly, part of the stipulation at issue. The stipulation is thus

fundamentally different than that in appellant's primary case, *People v. Little* (2004) 115 Cal.App.4th 766, 9 Cal. Rptr. 3d 446. There, the defendant stipulated to violating a specific drug statute, thus necessarily admitting all elements contained within that statute. Here, appellant stipulated to much, but not all, of the statutory elements and not, as he argues, to an actual violation of the statute as a whole. Regardless whether appellant now regrets such a tactical choice, the stipulation itself was not improper.

People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *10-14.

> a.    *Legal Standard and Analysis*

A defendant pleading guilty is entitled to be advised by the judge in open court of his or her constitutional rights (a) against compulsory self-incrimination, (b) to be tried by a jury, and (c) to confront his or her accusers, and the court has an obligation to establish on the record that the defendant voluntarily and intelligently waived these rights. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Petitioner merely stipulated to facts, and did not plead guilty. "A stipulation to facts from which a judge or jury may infer guilt is simply not the same as a stipulation to guilt or a guilty plea." Adams v. Peterson, 968 F.2d 835, 839 (9th Cir. 1992). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction ... ." Boykin, 395 U.S. at 242. The Supreme Court recognized the distinction between a plea of guilty and stipulation of facts, thus, a defendant who stipulates to facts is not entitled to the full constitutional protections that apply to the tendering of a guilty plea. Adams, 968 F.2d at 841. As explained by the Fifth DCA, the gang-related special circumstance contains four elements, and following his plea, the first three of these elements were met. People v. Hayes, 2018 Cal. App. Unpub. LEXIS 121, at *12. Regarding the fourth element, the Fifth DCA discussed that the stipulated facts relied upon by the expert was insufficient to satisfy the element itself, and the expert's testimony was necessary to explain, both considering the history of gangs generally and the relevant gangs in particular, why an attack carried out by a Villa Posse gang member, against a Hoover Crip gang member, and undertaken in a manner similar to that which occurred here, would further the activities of the Villa Posse gang. Id. at *13. The Fifth DCA reasonably concluded that the stipulation itself was not improper, stating that Petitioner stipulated to much, but not all, of the statutory elements and not, as he argues, to an actual violation of the statute as a whole. Id. at *14. Thus, this claim should be rejected.

## III.      RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy of this Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 29, 2020**            **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE